# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| NICOLE LUCAS,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:18-CV-77-JEM<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Nicole Lucas on February 23, 2018, and Plaintiff's Social Security Opening Brief [DE 21], filed October 1, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On December 11, 2018, the Commissioner filed a response, and on January 14, 2019, Plaintiff filed a reply.

## I.  Background

On August 18, 2014, Plaintiff filed an application for benefits alleging that she became disabled on August 1, 2010. Plaintiff's application was denied initially and upon reconsideration. On March 21, 2017, Administrative Law Judge ("ALJ") Edward Kristof held a hearing, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. At the hearing, Plaintiff requested that her alleged onset date be amended to June 30, 2014. On August 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of June 30, 2014 through her date last insured of June 30, 2016.

3. The claimant has the following severe impairments: diabetes mellitus with neuropathy, retinopathy with left retinal detachment, history of deep vein thrombosis and hypertension, arthritis of the hip, anemia, and morbid obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity (RFC) to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must be allowed the option to change positions from sitting to standing and vice-versa every 30 minutes while remaining at her workstation. She must never climb ladders, ropes, or scaffolds, crawl, or crouch, can rarely use stairs, and only with a hand-rail, and occasionally climb ramps, balance and kneel. The claimant has no vision in her left eye. Her right eye retains the visual acuity of 20/30, so a significant reduction in depth perception, and a reduced peripheral vision to the left must be accommodated in her work. She must avoid all exposure to unprotected heights, hazardous machinery, and she cannot operate a motorized vehicle.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was 36 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 30, 2014, the amended alleged onset date, through June 30, 2016, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ failed to properly assess the state agency doctors' opinions, failed to consider Listings 11.14 and 4.11, and erred in accepting VE testimony that was not

4

supported by substantial evidence. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

A. State Agency Physicians

Plaintiff argues that the ALJ improperly erred in giving the state agency doctors moderate weight, as significant medical evidence arose after the state agency physicians rendered their opinions. The state agency opinions were completed on December 23, 2014 and March 26, 2015. Plaintiff argues that the state agency physicians did not have a full and accurate record, as later records showed neuropathy, diabetic foot and nail issues, cellulitis, ulcers, numbness and tingling of the feet, and DVT. Some of the records that Plaintiff points to in her brief arose prior to the state agency opinions, and therefore the doctors had the opportunity to review them. However, other medical evidence shows that Plaintiff's DVTs and DVT symptoms arose after the state agency physicians completed their opinions. Plaintiff's multiple DVTs and DVT symptoms did not begin until May of 2015, months after the last state agency physician issued an opinion. AR 367. Plaintiff was hospitalized at least 3 times for DVTs between May 2015 and November 2015.

At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The ALJ relied on the state agency physicians in considering Listings, yet the state agency physicians did not have the evidence necessary to determine what Listings to consider. For example, the ALJ mentioned Listings 1.02 and 2.02, but not explicitly discuss 11.14 (peripheral neuropathy) or 4.11 (chronic venus insufficiency). Given Plaintiff's

5

diagnoses of neuropathy and DVT, the ALJ should have consulted a medical expert with the benefit of the most recent medical evidence to determine whether Plaintiff met or medically equaled any Listings. "[A]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

This same error compromised the RFC. The ALJ found that Plaintiff's DVTs were considered a severe impairment, and speculated that the opportunity to switch between sitting to standing every thirty minutes would account for Plaintiff's history of DVTs. However, no medical professional in the record gave an opinion on how often Plaintiff would need to switch from sitting to standing during the workday. *Moreno*, 882 F.3d at 729 ("We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions."). This error requires remand. *Id.*; *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (an ALJ is required to submit new and potentially decisive findings to a medical expert)*; Clifford*, 227 F.3d at 870 ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.").

B.  VE Testimony

Plaintiff also challenges the ALJ's acceptance of the VE's method, arguing that the VE failed to explain her method of determining job numbers. The VE testified that based on the ALJ's RFC, Plaintiff could perform work as a charge account clerk (national job numbers of 96, 400), an order clerk (national job numbers of 106, 200), and a surveillance monitor (national job numbers of 98, 600). AR 70. Plaintiff's attorney asked the VE how she obtained the numbers for those jobs. The

6

VE stated that she obtained the numbers from the Bureau of Labor Statistics ("BLS"). AR 71. However, Plaintiff's attorney noted that the BLS job titles do not exactly correspond to the Dictionary of Occupational Titles ("DOT") job titles, and the SSA uses DOT titles for disability determinations. The ALJ further questioned the VE, who testified: "I look up the DOT code, and in the DOT, I find the [OES] code, and I take the OES code[1] and look up the OES code in the Bureau of Labor Statistics and that gives me a number." AR 71. The VE stated the job numbers in the OES exactly line up with the DOT job titles. AR 72-73. The ALJ responded by stating "[y]ou're the very first Vocational Expert that's ever said that [the OES code in the Bureau of Labor Statistics] gives exact figures per DOT title, for job numbers." AR 73. Plaintiff contends that this testimony does not adequately describe the method that the VE used to determine job numbers, and therefore the ALJ's step five finding is not supported by substantial evidence.

It is the Commissioner's burden to establish that there are a significant number of jobs available that Plaintiff is capable of performing. See 20 C.F.R. § 404.1560(c)(2); *McKinnie v. Barnhart*, 368 F.3d 907, 911 65 Fed. App'x. 80 (7th Cir. 2004). In order to establish job numbers, the Commissioner typically relies on vocational experts. 20 C.F.R. § 404.1566(e); *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). However, a vocational expert's testimony can only satisfy the Commissioner's burden if the testimony is reliable. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008); *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016). The process of establishing the reliability of the VE's job number estimate "does not require meeting an overly exacting standard," but the Commissioner still must "ensure the approximation is the product of a

---

[1] The OES code that the VE refers to is actually called a Standard Occupational Classification ("SOC"). Because the VE used the term "OES code" in this case, the Court will also refer to it as an OES code. However, prior case law refers to this code as an SOC code used by the OES. *Chavez v. Berryhill*, 895 F.3d 962, 965-66 (7th Cir. 2018).

reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968-69 (7th Cir. 2018). Here, the VE stated that OES job numbers "exactly match the DOT code." AR 73. However, "a one-to-one correlation does not exist. When a VE identifies an [OES] code and the number of jobs in that code, that number approximates (at best) the number of positions within a DOT job group - not the specific DOT job title that the VE identified as suitable for a particular claimant." *Chavez*, 895 F.3d at 965-66. Although the Court is concerned with the ALJ's failure to identify the errors in the VE's testimony at step five, Plaintiff has waived this argument by failing to object to the argument at the hearing.[2] *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (holding that unless the VE testimony conflicts with the DOT, a claimant waives all arguments regarding VE testimony if he does not object at the hearing).

On remand, the ALJ is instructed to submit any new and potentially decisive medical evidence to a medical expert, and build a logical bridge from the evidence in the record to his or her conclusions. See *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion."). The Court encourages the ALJ to obtain reliable VE testimony in determining job numbers. The Commissioner should not assume that any allegations not discussed in this opinion have been adjudicated in her favor.

### IV.  Conclusion

---

[2] The Commissioner did not address this in her response brief, but the law is clear that Plaintiff has waived this argument by failing to object at the hearing. Plaintiff's counsel not only failed to object, but also told the ALJ that he "[didn't] need to ask any more about the method."

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 13th day of June, 2019.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record